532 S.E.2d 650

**STATE of West Virginia ex rel. Steven D. CANTERBURY, Executive Director of the West Virginia Regional Jail and Correctional Facility Authority, Petitioner,**

v.

**The MINERAL COUNTY COMMISSION; Robert Harman, Jack Bowers and Charles Logsdon, Commissioners; and Patrick L. Nield, Sheriff of Mineral County, Respondents.**

No. 27328.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2000.

Decided June 8, 2000.

---

**382**

---

Chad M. Cardinal, Esq., WV Regional Jail & Correctional Facility, Charleston, West Virginia, Attorney for Petitioner.

Lynn A. Nelson, Esq., Mineral County Prosecuting Attorney, Keyser, West Virginia, Attorney for Respondent.

1. *West Virginia Code of State Regulations* 95–3–36.29 defines a "jail" as: "A confinement facility, usually operated by a local law enforcement agency, which holds persons detained pending adjudication and/or persons committed after adjudication for sentences of one year or less." 95–3–36.14 defines a "detention facility" as a "confinement institution to which adults may be sen-

**STARCHER, Justice:**

**I.**

*Facts and Background*

In the instant case, the petitioner is the West Virginia Regional Jail and Correctional Authority ("the Authority"), appearing by its Executive Director, Steven D. Canterbury. (The Authority is established by *W.Va. Code,* 31–20–1 *et seq.*) The respondents are the Mineral County Commission and its members, and the local sheriff (collectively, "the Commission"). The Authority invokes this Court's original jurisdiction and seeks a writ of mandamus to compel the Commission to incarcerate all people sentenced in Mineral County to serve their jail sentences in the West Virginia Regional Jail system.

The Commission owns and operates the Mineral County Detention Center, built in 1978. In December of 1990, the Commission changed its denomination of the Detention Center from "county jail" to "holding facility." [1] This change coincided with the opening of the Eastern Regional Jail in Martinsburg, West Virginia.

According to the Commission, the Commission thereafter created and implemented a "local incarceration" program, whereby certain persons who have been convicted of crimes and given sentences of jail time could serve their jail sentences in the Detention Center, instead of in a regional jail.

Under the Mineral County system, the process of local incarceration begins with the filing of a "Request for Local Incarceration" by a convicted defendant, wherein the defendant states:

Comes now, the undersigned, and Requests the Court that pursuant to West Virginia Code 31–20–9 and 31–20–10 he/she be allowed to *serve any jail time* im-

tenced for up to 1 year or confined pending adjudication." 95–3–36.23 states that a "Holding Facility or Lockup" is a "temporary confinement facility, for which the custodial authority is less than 72 hours, where arrested persons are held pending release, adjudication, or transfer to another facility."

posed in this case in the Mineral County Detention Center.

(Emphasis added.)

The Commission in its brief before this Court further explains its local incarceration system as follows:

[T]he court system in Mineral County has developed a waiver system whereby inmates who wish to remain at the Mineral County Detention Center can do so. Most inmates wish to stay in Keyser because it is close to their work and families and many do not have the transportation available to them that would be necessary if they were housed at the regional jail which is 45 to 60 minutes away from Keyser.

The way the waiver system works is simple. The inmates file with the Court a request for local incarceration. It works exactly the same as a request for an information when a defendant desires to waive his right to have his case presented to a grand jury.

The request states that the inmate has been advised that the Mineral County Center does not conform to the West Virginia minimum standards for the construction, operation and maintenance of jails. The inmates are also aware that at any time during their incarceration at the Mineral County Detention Center they have the absolute right to be transferred to a regional jail upon request without question.

After the court receives a request for local incarceration, a hearing is held in which the inmate executes a waiver of rights before the court. This process is similar to the taking of a guilty plea in which the court or defendant's counsel questions the defendant to determine if the inmate is freely, voluntarily, knowingly and intelligently waiving their rights to be incarcerated in a regional jail. The waiver once again advises them that the Mineral County Detention Center is not operated according to standards other than á 12-hour holding facility and that they have an absolute right to be transferred to a regional jail at any time upon request. The waiver also lists the ways in which the Mineral County Detention Center does not conform to jail standards. Once the court

is satisfied that the inmate has freely, voluntarily, knowingly and intelligently waived his/her rights, it enters an order granting the request.

The whole point of the waiver system is plain and simple. It is the inmates who are requesting to stay at the detention center. The respondents are not forcing anyone to stay there. The respondents readily admit that they could not legally force anyone to stay in the detention center for more than 12 hours. They never have and they never will.

Under the Commission's local incarceration program, the court order that permits the inmate to serve his or her jail sentence at the Detention Center states in pertinent part that:

... having Received the Defendant's Request For Local Incarceration and Waiver of Rights, the Court does hereby Order that the Defendant *may be incarcerated* at the Mineral County Detention Center....

(Emphasis added.)

According to the Commission, by housing persons who are serving jail sentences—and who are simultaneously participating in the county's Work Release, Community Service, Litter Control, Weekend Jail, and Trustee Programs—in the Detention Center, the Commission can save the taxpayers of Mineral County between $200,000.00 and $250,000.00 per year—because Mineral County can house the inmates in the Detention Center for $20.00 per day, as opposed to the rate of $39.50 per day charged by the Regional Jail.

The Authority does not dispute what the Commission says about the nature and virtues of the Commission's local incarceration program. The Authority simply contends that this program, whatever its virtues, nevertheless violates the statutory mandate that was enacted in connection with the creation of the regional jail system, regarding where persons sentenced to serve jail sentences must be incarcerated.

Specifically, the Authority points to *W.Va. Code,* 31–20–10(g) [1998], that states:

(g) After a regional jail facility becomes available pursuant to this article for the

incarceration of inmates, each county within the region *shall incarcerate all persons whom the county would have incarcerated in any jail prior to the availability of the regional jail facility in the regional jail facility* except those whose incarceration in a local jail facility used as a local holding facility is specified as appropriate under the standards and procedures developed pursuant to section nine of this article and who the sheriff or the circuit court elects to incarcerate therein.

(Emphasis added.)[2]

The Authority argues that the statute clearly requires that people who are serving jail sentences must be incarcerated in a regional jail, when one is available.

## II.

### Standard of Review

Although we are in one respect reviewing sentencing-related orders of a circuit court, under the procedural posture of this case we are exercising original jurisdiction in mandamus. In any event, our decision turns on the *de novo* legal interpretation of a statute.

## III.

### Discussion

Our discussion can be brief—because, despite the Commission's ingenuity and commendable attention to procedural and substantive due process in crafting and implementing its local incarceration system—

the statutory mandate is clear. *W.Va. Code*, 31–20–10 [1998] requires that all persons serving jail sentences must serve them in a regional jail when one is available in the region where the sentencing county is located—subject to an exception for holding facility confinement that is "appropriate under the standards and procedures" for holding facilities. *Id.* Those standards and procedures, *West Virginia Code of State Regulations* 95–3–36.23 [1993], provide for no more than 72–hour confinement in a holding facility. *See* note 1 *supra.*

Applying this rule to the Commission's local incarceration program, it is clear—from the language of the convicted person's request that initiates the local incarceration process, to the language of the resultant court order—that defendants who are in the Commission's "local incarceration" program *are serving jail sentences* that would have been served in the county jail prior to the existence of the regional jail system. Under *W.Va.Code*, 31–20–10 [1998], the Commission must incarcerate such persons in the regional jail operated by the petitioner.[3]

## IV.

### Conclusion

For the foregoing reasons, we grant the requested writ of mandamus, and require the respondents to incarcerate all persons who are serving sentences of jail incarceration in the appropriate regional jail facility—except

---

**2.** This language is mirrored generally in *W.Va. Code*, 31–20–9(b) [1998]:

> (b) Notwithstanding any other provision of this code to the contrary, any county commission providing and maintaining a jail on the effective date of this article may not be required to provide and maintain a jail after a regional jail becomes available pursuant to the provisions of article twenty, chapter thirty-one of this code, unless the county commission determines that a facility is necessary: Provided, That the county commission may provide and maintain a holding facility which complies with the standards set forth for holding facilities in legislative rules promulgated by the jail facilities standards commission or its predecessor, the jail and correctional facilities standards commission.

**3.** This Court is sympathetic to and supportive of the Commission's desire to use creative criminal sentencing methods to appropriately sanction offenders and to safely and humanely serve local needs, local people, and local autonomy. There is no reason to believe that the Legislature, in creating a regional jail system, intended to entirely pre-empt flexibility and local innovation in developing and implementing criminal sanctions, and this is not the import of our decision. For example, nothing in this opinion should be construed to prohibit a circuit court, as part of imposing conditions of probation, from restricting a convicted person periodically to a local holding facility for periods of time that are in accordance with the standards for such a facility. *Cf. State v. Lewis*, 195 W.Va. 282, 289, 465 S.E.2d 384, 391 (1995) (circuit court may order home incarceration as a condition of probation).

for confinement in a holding facility for periods of time permitted by the applicable standards for such a facility.

Writ Granted.